TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00702-CR







Donyell Dekal Fredrick, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 43,892, HONORABLE RICK MORRIS, JUDGE PRESIDING







PER CURIAM



 A jury found appellant guilty of aggravated robbery. Tex. Penal Code Ann.
§ 29.03 (West 1994). (1) The district court assessed punishment at imprisonment for life. In four
points of error, appellant contends the court erred by overruling his motion for mistrial, by
refusing his request to display another possible suspect before the complaining witness, and by
overruling his motion for new trial. We will affirm.

 The complainant, Margie Morgan, worked at a Killeen laundromat. At 9:30 p.m.
on December 22, 1993, a man entered the laundromat, repeatedly struck Morgan on the head with
a pistol, and demanded money. A second man kept watch at the door. Morgan identified
appellant at trial as the man who hit and robbed her. 

 Appellant offered alibi testimony and attempted to show that he had been
misidentified. During cross-examination, Morgan was asked by defense counsel if she noticed
"anything about the assailant's dental work or anything? Did he have any gold teeth or anything
of that nature that you can remember?" Morgan said the man "appeared to have a gold tooth." 
Morgan acknowledged that she could not see such a tooth in appellant's mouth at trial. A defense
witness testified that appellant never had a gold tooth. In rebuttal, a State witness recalled seeing
appellant with a gold tooth.

 Appellant moved for a mistrial after the State rested and the following transpired:



 THE COURT: . . . Okay. We're outside the presence of the jury
in cause number 43,892 and with the Defendant and his attorney and the State's
attorney present and one of our jurors, Mrs. Jackson; is that correct?


 JUROR JACKSON: Yes, sir.


 THE COURT: Okay. I've got just a couple of questions that I
wanted to ask you, ma'am. It is my understanding that you had told our bailiff,
Deputy Kneese -- Well, I'll tell you what, before I repeat what you said, why don't
you tell me what you told Deputy Kneese?


 JUROR JACKSON: I told him that I knew the Defendant and that
I knew him as, as having a gold tooth.


 THE COURT: Okay. Is that something that you didn't recognize
until after you got started?


 JUROR JACKSON: I did not recognize him at first. He looked
familiar when I first came in as I was picked.


 . . .


 THE COURT: How do you know him? How did you know him?


 JUROR JACKSON: I've worked at a supermarket in Killeen for 21
years and I had seen him in there.


 THE COURT: Okay. Do you, as a result of this personal
knowledge of -- Well, first let me back up. Was he a personal friend, a social
friend?


 JUROR JACKSON: Oh, absolutely not.


 THE COURT: A business --


 JUROR JACKSON: Knowing him coming in the store.


 THE COURT: Okay. Did you know nothing about, or at least up
until the time we started voir dire, the jury selection, did you know anything about
the facts of the case?


 JUROR JACKSON: No.


 THE COURT: Obviously you know something now, but did you
know anything about the facts of the case?


 JUROR JACKSON: No, absolutely not, and never had talked to the
man other than maybe to greet him, you know.


 THE COURT: Okay. Can you render your verdict upon the
evidence and solely from the evidence in this case, and you remember what the
evidence is, that's those people who are testifying --


 JUROR JACKSON: Yes.


 THE COURT: -- and any other documents that I allow to be
admitted?


 JUROR JACKSON: Yes, I gave a lot of thought to that and it hasn't
changed anything.



In response to further questions by the court, Jackson stated that she began the trial with no bias
or conclusion regarding appellant's guilt or innocence and that she could follow her oath as a
juror. Jackson assured the court that she had not spoken to the other jurors about this matter and
was strongly admonished by the court not to do so. She said she would have "no problem at all"
deciding the case solely on the evidence adduced in the courtroom.

 After Jackson returned to the jury room, appellant moved for a mistrial as follows:


 I, because of the events that have just transpired, your Honor, I
would move the court for a mistrial because we now have a juror who, during voir
dire, said she did not know the Defendant, now we have her saying that she does
know the Defendant and she does have information that if she does share it with
the jury would be evidence coming outside of the stand and the testimony of the
witnesses and that could severely prejudice the Defense in this case if she goes in
there and tells them, well, I -- and I expect that to be a point of controversy for her
to go in there and tell the other jurors, well, I've seen him with, with a gold tooth,
would severely prejudice us and subject the jury to evidence coming outside of the
record. And for that reason and for her not letting, letting us know that she
recognized the Defendant, I would move for a mistrial on those grounds.



The court overruled the motion "at this point." The motion was not renewed.

 In point of error one, appellant contends he was entitled to a mistrial because
Jackson "had knowledge of a material fact that was in issue in appellant's trial and that knowledge
prevented her from being a fair and impartial juror." Appellant argues that Jackson's prior
familiarity with appellant's gold tooth made her a witness in the case. See Tex. Code Crim. Proc.
Ann. art. 35.16(a)(6) (West 1989). Appellant relies on Moya v. State, 691 S.W.2d 63 (Tex.
App.--San Antonio 1985, no pet.). In Moya, a juror told the court after trial began that he was
on the grand jury that returned the indictment. See art. 35.16(a)(7). The court of appeals held
that the preferred procedure in such a case is to inform the defendant that trial will continue
without discharging the juror unless the defendant either agrees to continue with eleven jurors or
asks for a mistrial, and that the court is obligated to honor the defendant's election. Moya, 691
S.W.2d at 65; but see Ex parte Hernandez, No. 200-94 (Tex. Crim. App. Sept. 13, 1995)
(opinion on motion for rehearing) (overruling sub silentio that portion of Carrillo v. State, 597
S.W.2d 769 (Tex. Crim. App. 1980), on which the Moya court relied).

 In order to preserve a complaint for appellate review, a party must present a timely
motion to the trial court stating the specific grounds for the ruling he desires the court to make. 
Tex. R. App. P. 52(a). In his motion for mistrial, appellant urged that he would be unfairly
prejudiced if Jackson shared her knowledge regarding the gold tooth with the other jurors, but he
did not contend that Jackson's knowledge biased her against appellant, made her a witness to the
case, or otherwise disqualified her from serving as a juror. Appellant may not assert on appeal
a ground for mistrial that was not presented to the district court either expressly or by fair
implication. Point of error one is overruled.

 Next, appellant contends his motion for mistrial should have been granted because
Jackson "failed to reveal during voir dire that she was acquainted with appellant prior to the trial
which caused the juror to have knowledge of a nature that, based on the evidence, incriminated
appellant." During voir dire, the prosecutor asked the panel if anyone knew or recognized
appellant. Two panelists responded affirmatively at that time, and a third spoke up later. Defense
counsel did not inquire further regarding the panelists' familiarity with appellant. In particular,
counsel did not ask the panelists who recognized appellant whether they were knowledgeable
about his dental work. The three venire members who said they knew or recognized appellant
were not selected as jurors.

 A defendant is entitled to a mistrial if a juror is found to have withheld material
information during voir dire that is likely to affect the juror's verdict. Decker v. State, 717
S.W.2d 903, 907 (Tex. Crim. App. 1986) (opinion on motion for rehearing); Elledge v. State,
890 S.W.2d 843, 848 (Tex. App.--Austin 1994, pet. ref'd). Appellant argues that Jackson's
knowledge of his gold tooth was material information likely to affect her verdict.

 Jackson cannot be said to have withheld her knowledge of appellant's gold tooth
because she was not asked about it during voir dire, either individually or as a member of the
panel. At most, the record demonstrates that Jackson unintentionally failed to disclose her
recognition of appellant as a customer of the store in which she worked. Appellant does not
contend that this was material information, but argues that because Jackson did not timely disclose
her familiarity with appellant, counsel "had no opportunity to ferret out" the crucial dental
information. This argument fails because defense counsel did not discuss appellant's teeth with
those venire members who indicated they knew or recognized appellant. There is no reason to
believe that if Jackson had immediately recognized appellant and disclosed this fact during voir
dire, her memory of appellant's gold tooth also would have been revealed. Because there is no
showing that material information was withheld by the juror, point of error two is overruled.

 In point of error four, appellant contends he should have been allowed to display
another person to the complaining witness. While cross-examining Morgan, defense counsel
asked permission to bring a jail inmate, Tyrone Harris, into the courtroom. Counsel stated that
Harris "is known to be involved in a rash of robberies in the Killeen area" and proposed to have
Morgan "take a look at him and . . . ask her if she recognizes the individual, and if that could
possibly be the one that robbed her." Counsel for Harris objected that the proposed procedure
was unduly suggestive because the witness had heard the reference to the "rash of robberies" and
because Harris was wearing jail clothing. The objection was sustained.

 Appellant argues that Harris did not have a Fifth Amendment privilege to refuse
to appear in the courtroom. This was not, however, the basis of the district court's ruling. While
the privilege against self-incrimination was mentioned by the prosecutor, the court disallowed the
showup because the proposed procedure was unduly suggestive. Because appellant's fourth point
of error does not discuss the merits of the district court's ruling, it is overruled.

 Finally, appellant urges that he should have been granted a new trial on the basis
of newly discovered evidence. Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 1995). At
the hearing on his motion for new trial, appellant offered the testimony of Troy Sanders, a jail
inmate. Sanders testified that he was briefly employed by the laundromat in question, that he
spoke to Morgan several months after the robbery, and that she told him she could not identify
the robber. According to Sanders, Morgan could remember only that the robber was short and
"she said something about gold teeth."

 Sander's testimony merely impeached that of the complaining witness. As such,
it did not entitle appellant to a new trial on the ground of newly discovered evidence. Drew v.
State, 743 S.W.2d 207, 226 (Tex. Crim. App. 1987); Elledge, 890 S.W.2d at 846. Point of error
three is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: September 27, 1995

Do Not Publish
1. Section 29.03 was amended in a nonsubstantive way after this offense was committed.



prosecutor asked the panel if anyone knew or recognized
appellant. Two panelists responded affirmatively at that time, and a third spoke up later. Defense
counsel did not inquire further regarding the panelists' familiarity with appellant. In particular,
counsel did not ask the panelists who recognized appellant whether they were knowledgeable
about his dental work. The three venire members who said they knew or recognized appellant
were not selected as jurors.

 A defendant is entitled to a mistrial if a juror is found to have withheld material
information during voir dire that is likely to affect the juror's verdict. Decker v. State, 717
S.W.2d 903, 907 (Tex. Crim. App. 1986) (opinion on motion for rehearing); Elledge v. State,
890 S.W.2d 843, 848 (Tex. App.--Austin 1994, pet. ref'd). Appellant argues that Jackson's
knowledge of his gold tooth was material information likely to affect her verdict.

 Jackson cannot be said to have withheld her knowledge of appellant's gold tooth
because she was not asked about it during voir dire, either individually or as a member of the
panel. At most, the record demonstrates that Jackson unintentionally failed to disclose her
recognition of appellant as a customer of the store in which she worked. Appellant does not
contend that this was material information, but argues that because Jackson did not timely disclose
her familiarity with appellant, counsel "had no opportunity to ferret out" the crucial dental
information. This argument fails because defense counsel did not discuss appellant's teeth with
those venire members who indicated they knew or recognized appellant. There is no reason to
believe that if Jackson had immediately recognized appellant and disclosed this fact during voir
dire, her memory of appellant's gold tooth also would have been revealed. Because there is no
showing that material information was withheld by the juror, point of error two is overruled.

 In point of error four, appellant contends he should have been allowed to display
another person to the complaining witness. While cross-examining Morgan, defense counsel
asked permission to bring a jail inmate, Tyrone Harris, into the courtroom. Counsel stated that
Harris "is known to be involved in a rash of robberies in the Killeen area" and proposed to have
Morgan "take a look at him and . . . ask her if she recognizes the individual, and if that could
possibly be the one that robbed her." Counsel for Harris objected that the proposed procedure
was unduly suggestive because the witness had heard the reference to the "rash of robberies" and
because Harris was wearing jail clothing. The objection was sustained.

 Appellant argues that Harris did not have a Fifth Amendment privilege to refuse
to appear in the courtroom. This was not, however, the basis of the district court's ruling. While
the privilege against self-incrimination was mentioned by the prosecutor, the court disallowed the
showup because the proposed procedure was unduly suggestive. Because appellant's fourth point
of error does not discuss the merits of the district court's ruling, it is overruled.

 Finally, appellant urges that he should have been granted a new trial on the basis
of newly discovered evidence. Tex. Code Crim. Proc. Ann. art. 40.001 (West